**Opinion dated September 11, 2018 Withdrawn, Motion for Rehearing Denied, Reversed and Remanded, and Substitute Majority and Substitute Dissenting Opinions filed October 23, 2018.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-17-00005-CR**

---

**LESLEY ESTHER DIAMOND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Cause No. 2112570**

---

## S U B S T I T U T E   M A J O R I T Y   O P I N I O N

After we issued our opinion on rehearing, the State filed a motion for rehearing. We withdraw our majority opinion on rehearing issued on September 11, 2018, issue this substitute majority opinion, and deny the State's motion for rehearing.

Appellant Lesley Esther Diamond was convicted of misdemeanor driving

while intoxicated. She filed an application for writ of habeas corpus, in which she alleged that the State suppressed favorable evidence in violation of her due process rights. After a hearing, the habeas court denied the application. On appeal, appellant contends in one issue that the habeas court erred in concluding that the undisclosed evidence is not favorable to the defense or material to the jury's guilty verdict under *Brady v. Maryland*.[1] Concluding that the undisclosed evidence is material to the jury's verdict and favorable to appellant, we reverse the trial court's order.

## *Background*

Appellant did not appeal her conviction. But after appellant was convicted, Andrea Gooden, an analyst from the Houston Police Department crime lab who testified in appellant's trial, self-reported that the crime lab had violated quality control and documentation protocols. This report culminated in an investigation and report by the Texas Forensic Science Commission that was provided to appellant after her conviction.

## I.    Evidence Adduced at Trial

Deputy Bounds was conducting a traffic stop in Harris County, Texas, when he observed appellant driving in excess of the speed limit in the lane closest to Bounds's stopped patrol car and the other stopped vehicle. Appellant made several unsafe lane changes without signaling that caused other drivers to brake suddenly. Bounds got into his vehicle and pursued appellant until she stopped her vehicle.

While conducting the stop, Bounds asked appellant to step out of her vehicle. When she did so, she staggered. Appellant told Bounds she was coming from a golf

---

[1] In that case, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

course at a country club but did not know the name or location of the country club. Appellant told Bounds she had consumed three beers that day. She also had an empty can of beer and two cold, unopened cans of beer in her car.

Bounds testified that appellant appeared intoxicated, smelled of alcohol, had red, glassy eyes and incoherent, slurred speech, and appeared confused. Appellant said she had taken medication but was unable to tell Bounds what kind of medication it was.

Bounds requested another deputy to assist him. Deputy Francis arrived and administered field sobriety tests. Bounds testified that he observed appellant exhibit five out of eight clues of intoxication on the walk and turn test and four out of four clues on the one leg stand test.[2] Bounds further testified that appellant had poor balance and staggered during the walk and turn test but conceded that Francis made some mistakes in administering the field sobriety tests. Bounds opined that appellant was intoxicated.

Gooden testified that her analysis of appellant's blood sample revealed a blood alcohol concentration (BAC) of 0.193, which is above the legal limit of 0.08.

The prosecutor argued during closing argument that the blood analysis was "really important" because 0.193 is "multiple times" the legal limit and that "[i]t is pretty much undisputed that Deputy Bounds is not good at testifying. In fact, he's probably not a very good officer" and "[e]ven someone as simple or dumb, however you want to call it, as Deputy Bounds, it was clear to him that she was intoxicated."

The jury found that appellant's BAC was above 0.15.

---

[2] The trial court excluded Francis's testimony as a sanction at trial because Francis and Bounds discussed the case with the prosecutor in each other's presence in violation of the Rule. *See* Tex. R. Evid. 614 (the Rule).

## II.    Evidence Adduced at Habeas Hearing

Because of her involvement with an erroneous lab report in an unrelated case, Gooden had been removed from casework two weeks prior to appellant's 2014 trial. In the unrelated case, an officer had mislabeled vials containing blood specimens with the wrong suspect's name. Knowing about the error, Gooden analyzed the blood samples but initially set them aside until the officer could correct the mistake. Gooden also prepared a draft lab report and certified that it was accurate. The report, still containing the wrong suspect's name, erroneously was released into the Laboratory Information Management System (LIMS) in January 2014. Reports submitted on LIMS can be accessed by prosecutors.

On April 15, 2014, Gooden discovered the error and reported it. The next day, her supervisor, William Arnold, sent her an email stating that she would not be allowed to work on any other cases: "Until further notice[,] you are to focus solely on documenting the issues surround[ing] the [errors] in the case we discussed yesterday. Do not handle any evidence, process any data or generate any reports or documentation that is unrelated to your research on this case." Arnold did not document or disclose this action to the Harris County District Attorney's Office because he did not want to damage Gooden's career or subject her to harsh cross-examination by a defense lawyer.

Gooden issued a memorandum regarding the lab error on April 17 and assumed she would be able to resume her other casework at that time. Instead, she was told she could not return to casework.

Gooden testified for the State against appellant on April 29 and 30, 2014. The erroneous lab report and Gooden's removal from casework were not disclosed to the defense. Arnold observed Gooden's testimony at trial.

On May 12, 2014, Arnold told Gooden that she still could not commence with casework because she needed to improve her courtroom testimony. Arnold subsequently told a human resources director that he preferred retraining Gooden in lieu of "documenting concerns about [Gooden's] performance which would make [Gooden] subject to painful cross examination" and he wanted to avoid damaging Gooden's career.

Gooden filed a self-disclosure with the Commission on June 4, 2014 concerning the erroneous lab report, alleging that the crime lab failed to amend the report, notify the district attorney's office of the error, or issue a required corrective and preventative action report. After a period of retraining, Gooden was allowed to return to casework in August.

The Commission opened an investigation on August 1 to review Gooden's disclosure. On August 4, Arnold gave Gooden an interoffice memo in which he noted that in early April, Gooden prepared a PowerPoint presentation for use in court testimony and during the proposed presentation, Gooden could not answer "basic questions" about the type of analysis used to analyze blood alcohol content. Arnold questioned whether Gooden could convey the proper information and whether she understood the concepts associated with the analysis.

The City of Houston's Office of Inspector General conducted an investigation on these matters during the same timeframe and issued its report on December 18, 2014. It found, in relevant part, that (1) lack of attention by Arnold and Gooden allowed the erroneous report to be submitted to the district attorney's office; and (2) Gooden testified in three trials while "off casework" and without disclosing the erroneous report.

The Commission issued its report on January 23, 2015. It concluded that Arnold engaged in professional negligence by, among other things, failing to issue

5

timely amended reports to the district attorney's office once the mislabeling mistake was identified by Gooden and failing to document the reasons for Gooden's removal from casework. In doing so, the Commission concluded in relevant part, that Arnold:

1. Deprived the prosecutor of the opportunity to determine whether any action was required to disclose impeachment information to the defense;

2. Possibly deprived the defense of impeachment information to which it was entitled; and

3. Sent the message that it is acceptable not to document issues that arise in the laboratory for fear of a tough cross-examination.

The trial court considered this evidence and denied appellant's habeas application, issuing written findings and conclusions. On original submission, we affirmed the trial court's decision.

## III. Appellant's Motion for Rehearing

After we issued our opinion, appellant sought to correct an error in the underlying judgment of conviction.[3] The jury found that an analysis of appellant's blood showed an alcohol concentration of more than 0.15. Driving with such a concentration is a Class A misdemeanor. *See* Penal Code 49.04(d). The trial court orally pronounced appellant's conviction of a Class A misdemeanor. The original judgment, however, reflected that appellant was convicted of a Class B misdemeanor with a BAC of 0.08. Appellant filed a motion to enter judgment nunc pro tunc to correct the judgment to reflect her conviction of a Class A misdemeanor. On May

---

[3] Appellant's brief stated that she was charged with a Class B misdemeanor and failed to disclose that she was convicted of a Class A misdemeanor. In a post-submission letter brief, appellant's counsel referred this court to the supplemental reporter's record where "at sentencing, the [trial] court pronounced that [appellant] was convicted of a Class A misdemeanor based on the jury's affirmative finding on the special issue." It was after our original opinion had issued that appellant moved for and the trial court issued a judgment nunc pro tunc correcting the classification of appellant's conviction from a Class B to a Class A misdemeanor.

21, 2018, the trial court granted appellant's motion and entered a judgment nunc pro tunc showing that she was convicted of a Class A misdemeanor with a BAC of 0.15 or more.

## *Discussion*

Appellant argues that the habeas court erred in concluding that the undisclosed evidence is neither favorable nor material.[4] We agree with appellant that the undisclosed evidence is favorable to her and is material.[5]

To demonstrate reversible error under *Brady*, a habeas applicant must show (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to her; and (3) the evidence is material—that is, there is a reasonable probability that, had the favorable evidence been disclosed, the outcome of the trial would have been different. *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). The evidence central to the *Brady* claim must be admissible in court. *Id*.

We ordinarily review a habeas court's ruling on an application for writ of habeas corpus for an abuse of discretion. *Ex parte Navarro*, 523 S.W.3d 777, 780 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). But when the resolution of the ultimate issue turns on an application of purely legal standards, our review is de novo. *Id*.

---

[4] Appellant is not currently in custody, but the trial court had jurisdiction over her habeas application and we have jurisdiction over her appeal because she faces "collateral legal consequences" resulting from her misdemeanor conviction. *See Le v. State*, 300 S.W.3d 324, 326 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

[5] In our original opinion, we did not address whether the undisclosed evidence is favorable to appellant.

7

## I.    Favorability

The State concedes that it did not disclose the certification of the erroneous report. Also, the evidence is undisputed in the habeas record that the State did not disclose that Gooden had been suspended or temporarily removed from her casework or that Arnold lacked confidence in Gooden's understanding of the basic science. Therefore, we turn first to whether the undisclosed evidence is favorable.

Favorable evidence is that which, if disclosed and used effectively, "may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985). Favorable evidence includes exculpatory evidence and impeachment evidence. *Id.* Exculpatory evidence is that which may justify, excuse, or clear the defendant from fault, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence. *Pena v. State*, 353 S.W.3d 797, 811–12 (Tex. Crim. App. 2011); *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006).

The habeas court found that evidence of (1) a single incident in which Gooden certified a report with mislabeled blood in an unrelated case; and (2) Gooden's temporary removal from casework, would not have been relevant or admissible. The habeas court made no findings regarding evidence of Arnold's lack of confidence in Gooden's understanding of the basic concepts underlying the performance of her duties. Before we analyze the favorability of the evidence, we address whether the evidence is admissible.

The habeas court relied on Rule of Evidence 608(b) in finding that the undisclosed evidence is not admissible. "Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." Tex. R. Evid. 608(b).

8

Appellant asserts that she would not have offered the undisclosed evidence to attack Gooden's character for truthfulness and that the evidence does not demonstrate that Gooden has a mendacious character. Instead, according to appellant, the evidence would have been admissible to rebut and undermine Gooden's expert qualifications and the reliability of her opinion after the State presented her as a qualified expert.

We agree with appellant that Rule 608(b) does not render inadmissible at trial evidence of the mistakes in an unrelated case or Gooden's removal from casework. This evidence has no relation to whether Gooden has a propensity for being untruthful.

We also disagree with the habeas court's finding that the undisclosed evidence is not relevant. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. Tex. R. Evid. 401. In general, a witness may be cross-examined on any relevant matter, including credibility. Tex. R. Evid. 611(b). The undisclosed evidence is relevant because it can be used for impeachment of Gooden's qualifications and the reliability of her opinion. In addition, regardless of its admissibility, the evidence could have been used in moving under Rule of Evidence 702 to exclude Gooden's expert testimony entirely based on lack of qualifications or reliability. *See* Tex. R. Evid. 104(a); *Kelly v. State*, 824 S.W.2d 568, 572 & n.10 (Tex. Crim. App. 1992).

We now address whether the undisclosed evidence is favorable. Appellant argues that the suppressed evidence is admissible under the Confrontation Clause and Rule 702 because it relates directly to Gooden's qualifications and the reliability of her opinion. Had she known about Gooden's "suspension," her certification of the erroneous report in the unrelated case, and Arnold's lack of confidence in her understanding of the basic science, appellant claims she would have attempted to

9

exclude Gooden's testimony and, if unsuccessful, would have used the evidence to impeach Gooden. Appellant additionally argues she would have called Arnold to testify regarding his misgivings about Gooden's abilities. Thus, appellant asserts, even if Gooden had been permitted to testify as an expert at trial, the jury would have had a factual basis to doubt Gooden's qualifications and the reliability of her blood alcohol analysis.

We address each type of undisclosed evidence in turn. Appellant repeatedly refers to Gooden's having been "suspended" or being "under suspension." The habeas court found, however, that Gooden was not suspended but was "temporarily removed from casework" to focus on documenting the mislabeled blood sample report. The court noted that Arnold never used the terms "suspended" or "under suspension" until he wrote the August 4, 2014 memo, and further found Arnold's use of those terms "suspect and unpersuasive" given the TFSC's finding of "no professional misconduct" or "negligence" by Gooden; Gooden's continued performance of tasks and receipt of compensation; and Arnold's labeling Gooden's work status as "suspended" only after Gooden self-reported to the TFSC and contacted the human resources director about returning to work.

The State argues that the failure of the habeas court to find that Gooden was "suspended" or "under suspension" eviscerates appellant's theory that she can impeach Gooden's credibility by showing evidence that Gooden was "suspended" or "under suspension" when she testified at appellant's trial. Irrespective of the terms used to describe Gooden's work status ("under suspension" or "off of casework" or otherwise), Gooden's testimony would have been "subject to painful cross examination" had the evidence of her removal been disclosed, just as Arnold feared. We conclude that the undisclosed evidence of Gooden's work status at the time of appellant's trial is favorable impeachment evidence.

10

We also conclude that the certification of the mislabeled lab report in another case is favorable impeachment evidence. At appellant's trial, Gooden testified to several issues of State personnel mishandling evidence in this case: the vials containing appellant's blood were missing labels containing the nurse's name, the officer's name, the suspect's name, and the time of the draw; and the labels should have been placed on the blood vials when the vials were transported from the blood draw room to the police evidence locker. Moreover, Bounds testified at trial that the vials containing appellant's blood were in his custody from immediately after the draw until he turned them in at the police department. However, Bounds, who was not trained to transport blood evidence in DWI cases, left the vials unattended twice for at least 30 minutes at a time.

There is no evidence that Gooden personally was responsible for the errors in appellant's case. However, the undisclosed evidence would have provided appellant with "painful cross examination" material questioning the integrity of the crime lab's processes in analyzing blood samples for BAC at that time.

In his August 4, 2014 memo, Arnold claimed he had concerns about Gooden's level of knowledge and understanding regarding her "knowledge base" and her inability to answer "basic questions." This is favorable evidence with which to impeach Gooden's qualifications in performing the blood analysis and question the reliability of her opinion that appellant had a BAC of 0.193.

We conclude that the undisclosed evidence is favorable. That is, if the evidence had been disclosed and used effectively by appellant's counsel for impeachment, it might have made the difference between appellant's conviction and a possible verdict of acquittal. *See Bagley*, 473 U.S. at 676.

11

## II.     Materiality

The possibility that an item of undisclosed information might have helped the defense or affected the outcome of the trial does not establish materiality. *Miles*, 359 S.W.3d at 666. The undisclosed evidence is material only if there is a reasonable probability that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the evidence been disclosed to the defense. *Id*. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*.

Although we defer to the habeas court's credibility determinations, we review the question of materiality de novo. *See Ex parte Weinstein*, 421 S.W.3d 656, 664 n.17 (Tex. Crim. App. 2014) (noting that in addressing habeas claims involving *Brady*, materiality of evidence is reviewed de novo). We balance the strength of the exculpatory evidence against the evidence supporting conviction and consider the suppressed evidence collectively, not item by item. *Miles*, 359 S.W.3d at 666.

The habeas court concluded that appellant failed to establish materiality of the evidence because Bounds' testimony regarding appellant's intoxication was "more than sufficient" to support a guilty verdict[6] and there is no reasonable probability that the jury would have reached a different result if appellant had been able to cross-examine Gooden with the undisclosed evidence. The habeas court made the following fact findings in support of its conclusions on materiality:

- Bounds observed appellant speeding in the lane closest to Bounds and the stopped patrol car and other vehicle. Appellant made several unsafe

---

[6] We note that this is not the correct test for materiality. "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been [sufficient evidence] to convict." *Kyles v. Whitley*, 514 U.S. 419, 434–35 (1995). Instead, the question is whether, considering the whole record, the undisclosed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

12

lane changes and caused other drivers to brake suddenly.

- Appellant staggered when she got out of the car. She had red, glassy eyes, incoherent, slurred speech, and a very strong odor of alcohol and could not identify the name of the golf course she came from or what medication she had taken.

- Appellant admitted she drank three beers and had one open, and two cold, unopened cans of beer in her car.

- Bounds observed the other officer administer the walk and turn and one leg stand field sobriety tests. Bounds testified that appellant exhibited five out of eight clues of intoxication on the walk and turn test and four out of four clues of intoxication on the one leg stand test.

Appellant argues that there is a reasonable probability that the jury would not have convicted her if it had heard the undisclosed evidence because the blood alcohol evidence was the most important evidence of intoxication adduced at trial and Bounds was not a good witness. Bounds did not preserve the in-car video of the incident, lost his notes from the night of the incident, and admitted that the police report "contains numerous mistakes." He also conceded that the officer who administered the field sobriety tests did not give appellant proper instructions. The prosecutor made handwritten additions to the police report for Bounds to rely on during his testimony to add observations of clues of intoxication. Bounds was not trained to transport blood evidence and did not have custody of the blood specimen for two periods of at least 30 minutes during which the specimen was unattended in his car and the location was not documented.

We agree with the State that it provided ample evidence of intoxication; however, the jury also found that "an analysis of [appellant's] blood showed an alcohol concentration of 0.15 or more." That finding is a required element of a Class A misdemeanor, of which appellant was convicted. *See* Tex. Penal Code § 49.04(d). The evidence supporting this answer could only have come from Gooden's

13

testimony and related exhibits. Had appellant been convicted of a Class B misdemeanor, Bounds's testimony of intoxication would have been sufficient, and Gooden's testimony would not have been material. *See id.* § 49.01(2) (defining "intoxicated" as having an alcohol concentration of 0.08 or more *or* "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or other substances or combination thereof). However, because appellant was convicted of a Class A misdemeanor, evidence was required to establish a BAC of 0.15 or more. *See id.* § 49.04(d).

Gooden's testimony that she analyzed a sample of blood identified as appellant's and concluded the BAC was 0.193 was necessary for the jury to make an affirmative finding on the special issue of whether appellant's BAC level was 0.15 or more. *See Castellanos v. State*, 533 S.W.3d 414, 419 (Tex. App.—Corpus Christi 2016, pet. ref'd). The statutory scheme differentiates between a Class A and Class B misdemeanor based upon an analysis of blood, breath, or urine showing an alcohol concentration level of 0.15 or more. *See* Tex. Pen. Code § 49.04b(b), (d). There was no testimony regarding appellant's BAC from any witness other than Gooden.

Given the lack of other evidence indicating appellant had a BAC of 0.15 or more, we conclude that there is a reasonable probability that the jury would have reached a different result on the Class A misdemeanor charge if Gooden's testimony had been excluded. We also conclude that if the habeas court had not excluded Gooden's testimony but allowed appellant to cross-examine Gooden with the undisclosed evidence, there similarly is a reasonable probability that the jury would have reached a different result.

## III. The State's Motion for Rehearing

The State filed a motion for rehearing, in which it asserts that we erred by not

14

addressing, in our September 11, 2018 majority opinion on rehearing, all the arguments it raised in response to appellant's motion for rehearing in accordance with Texas Rule of Appellate Procedure 47.1. Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issued raised and necessary to final disposition of the appeal.").[7] Although we considered the State's additional arguments and concluded that addressing them in the opinion was not necessary to the disposition of this appeal, we address them here for clarity.

The State urged in its response to appellant's motion for rehearing that appellant was presenting new arguments that she did not present to the trial court. Appellant's habeas petition stated that she "was charged with [a] Class B misdemeanor," and the trial judge made the same recitation in the procedural history of his findings of fact. However, in the same procedural section of his findings of fact, the trial judge also stated, "the jury convicted Applicant and found that her blood alcohol concentration was above 0.15." Because appellant moved for rehearing asking this court to consider the *Brady* issue in light of the nunc pro tunc judgment for a Class A misdemeanor, the State contends that this court—as an intermediate appellate court with no original habeas corpus jurisdiction in criminal cases—does not have the authority to address appellant's request.[8]

---

[7] *See also State v. Cortez*, 501 S.W.3d 606, 609 (Tex. Crim. App. 2016) (vacating the judgment of the court of appeals and remanding the case to that court to consider an opinion, which the court of appeals failed to address and which the State claimed resolved the case); *Ikner v. State*, 848 S.W.2d 161, 162 (Tex. Crim. App. 1993) (vacating the judgments of the court of appeals and remanding the causes to the that court because it sustained appellant's points of error without addressing the State's argument that appellant had not preserved error for appellate review).

[8] *See Ex parte Evans*, 410 S.W.3d 481, 485 (Tex. App.—Fort Worth 2013, pet. ref'd) (refusing to consider on appeal from the denial of an application for writ of habeas corpus an argument not raised in the application); *Greenville v. State*, 798 S.W.2d 361, 362–63 (Tex. App.—Beaumont 1990, no pet.) (holding that the court of appeals could not rule on issues on appeal from the denial of an application for writ of habeas corpus that were not raised in the application).

We disagree. A review of appellant's application for writ of habeas corpus, the habeas corpus hearing record, her appellate brief, and her motion for rehearing reflect that the ground on which appellant seeks habeas corpus relief has remained consistent in the trial court and on appeal: that the State violated *Brady* by not disclosing evidence concerning Gooden's qualifications and the reliability of her opinions. As explained above, appellant's conviction of a Class A rather than a Class B misdemeanor shows that the withheld evidence was material. But the nature of appellant's conviction has not changed: even if appellant and the habeas judge later made clerical errors, the trial court orally pronounced that appellant was convicted of a Class A misdemeanor. Indeed, the State notes that "the .15 enhancement was plain on the face of the record, and the appellant's habeas counsel was also her trial counsel." We also note that the habeas court was the trial court. Accordingly, we find no merit in the State's arguments and deny its motion for rehearing.

### *Conclusion*

We reverse the order of the trial court denying appellant's application for writ of habeas corpus, grant habeas relief, set aside the nunc pro tunc judgment of conviction signed May 21, 2018, and remand this case for further proceedings consistent with this opinion.

/s/    Martha Hill Jamison
Justice

Panel consists of Justices Jamison, Busby, and Donovan (Donovan, J., dissenting). Publish — TEX. R. APP. P. 47.2(b).

16