

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00037-CR

EX PARTE JACOB RYAN EVANS

----------

### FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

----------

## OPINION

----------

In two points, appellant Jacob Ryan Evans appeals the trial court's order setting his bond at $750,000 and denying the remaining relief that he requested in his application for a writ of habeas corpus. We affirm.

## Background Facts

In the first count of a December 2012 three-count indictment, a grand jury charged appellant with committing capital murder in October 2012 by intentionally or knowingly killing Jami Evans and Mallory Evans in the same criminal transaction.[1] The other two counts of the indictment charged appellant

---

[1]*See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2011), § 19.03(a)(7)(A) (West Supp. 2012).

with murdering Jami and Mallory individually. The trial court appointed counsel to represent appellant.

In January 2013, appellant filed an application for a writ of habeas corpus, alleging that his incarceration for the capital murder count of the indictment was unconstitutional because he was seventeen years old upon allegedly committing the offense[2] and because two decisions by the United States Supreme Court had established that "neither of the two statutorily authorized punishments for this offense [could] be applied to him."[3] Appellant contended that under such circumstances, his continued detention, "and the continued restraint of [his] liberty in order to compel [him] to answer to such charge . . . [was] unlawful." Thus, appellant urged the trial court to "immediately discharge[]" him from any further restraint under the capital murder allegation. Appellant also argued that the trial court had violated his constitutional and statutory rights by refusing to set a bond.

---

[2]Appellant attached his birth certificate to his application. The birth certificate establishes that appellant was born in May 1995.

[3]See *Miller v. Alabama*, 132 S. Ct. 2455, 2463, 2469 (2012) (holding that mandatory life without the possibility of parole for defendants under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition of cruel and unusual punishment); *Roper v. Simmons*, 543 U.S. 551, 568, 578, 125 S. Ct. 1183, 1194, 1200 (2005) (holding that the imposition of the death penalty on offenders who committed a crime before turning eighteen years old is unconstitutional).

The trial court set a hearing on appellant's application. In responding to the application and in urging the trial court to deny relief on part of it,[4] the State principally contended that appellant was making pretrial as-applied challenges to the constitutionality of the Texas capital murder sentencing statutes and that such challenges were not cognizable through an application for a writ of habeas corpus.[5] The State noted that appellant had not challenged the constitutionality of the penal code provision that defined capital murder and asserted, in part,

> The state's capital murder sentencing statutes are not keeping [appellant] in confinement or otherwise restraining his liberty. Rather, it is the fact he was indicted with an allegation of violating the capital murder statute which has caused the present "restraint" of his liberty. It is not until [appellant] is actually convicted of the offense of capital murder after a trial that it can be said those statutes are "restraining" [appellant's] liberty interests.

In summary, the State argued that appellant's challenges to the constitutionality of any sentence that he could receive under Texas's capital murder sentencing statutes could be properly resolved only in the event of, and subsequent to, his conviction.

---

[4]The State did not contest appellant's request for the trial court to set a bond.

[5]The State relied on a decision by the court of criminal appeals in which that court held that a pretrial habeas corpus application "can be used to bring a facial challenge to the constitutionality of the statute that defines the offense but may not be used to advance an 'as applied' challenge." *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (citing *Ex parte Weise*, 55 S.W.3d 617, 620–21 (Tex. Crim. App. 2001)).

Appellant replied to the State's response by reiterating that no Texas statute provided a constitutional punishment that could be applied to appellant in the event of his conviction. Although appellant recognized that as-applied constitutional challenges could not generally be litigated in pretrial habeas corpus applications, he contended that he was not bringing such a challenge because the unconstitutional application of the Texas capital murder sentencing statutes to him had already been clearly established by the Supreme Court's precedent, which, according to appellant, affected the trial court's power to proceed on the capital murder charge.

The trial court heard arguments from both parties at a brief hearing on the writ application. During the hearing, the State conceded that at the time of the hearing, there was no constitutional sentence for a seventeen-year-old person convicted of capital murder. The State explained, however, that a "lot of things could happen" regarding the sentencing statutes before the trial of the case, and the State specifically referred to a bill that was pending in the legislature that could "fix" the constitutional problem.

Appellant's father, Darryl Evans, testified at the hearing that he did not intend to assist appellant in making a bond, that appellant did not have any assets to contribute to making a bond, and that appellant had not previously been convicted of a crime. The trial court, over appellant's objection, admitted a written statement that appellant gave on the day of the offense. The statement, given in October 2012, included appellant's acknowledgements that he had

4

received *Miranda*[6] warnings. In the statement, appellant wrote that after watching a movie, hitting golf balls, and thinking about how to kill his family, he shot Mallory (his sister) and Jami (his mother) multiple times.

The court denied relief on the majority of appellant's habeas corpus application but set a bond of $750,000. Appellant brought this appeal.

### The Validity of Appellant's Confinement for Capital Murder

In his first point, appellant argues that the trial court erred by denying his primary requested relief—discharge from custody on the capital murder charge against him—on the ground that as a result of the holdings in *Miller* and in *Roper*, no constitutional punishment could be applied to him if he was convicted of that offense.

The sole purpose of an appeal from a trial court's habeas corpus ruling is to "do substantial justice to the parties," and in resolving such an appeal, we may "render whatever judgment . . . the nature of the case require[s]." Tex. R. App. P. 31.2, 31.3; *see Ex parte Idigbe*, No. 02-12-00561-CR, 2013 WL 772891, at *5 (Tex. App.—Fort Worth Feb. 28, 2013, pet. ref'd) (mem. op., not designated for publication). We review the trial court's decision to deny habeas corpus relief for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006). We will uphold the trial court's judgment as long as it is correct on any theory of law applicable to the case. *Ex parte Murillo*,

---

[6]*See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966).

5

389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Ex parte Primrose*, 950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd).

Because appellant was seventeen years old at the time that he allegedly committed capital murder, he cannot be tried as a juvenile. *See* Tex. Fam. Code Ann. § 51.02(2)(A) (West Supp. 2012), § 51.04(a) (West 2008). At all points from the date of appellant's alleged offense through the date of the submission of this appeal, two Texas statutes relating to sentencing of a capital felony offense provided that an adult (such as appellant) found guilty of such an offense could be punished only by mandatory imprisonment for life without parole or by death. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 765, § 1, 2009 Tex. Gen. Laws 1930, *amended by* Act of July 11, 2013, 83rd Leg., 2d C.S., S.B. 2, § 1 (to be codified at Tex. Penal Code Ann. § 12.31); Act of May 28, 2005, 79th Leg., R.S., ch. 787, § 1, 2005 Tex. Gen. Laws 2705, *amended by* Act of July 11, 2013, 83rd Leg., 2d C.S., S.B. 2, § 2 (to be codified at Tex. Code Crim. Proc. Ann. art. 37.071). Under *Miller* and *Roper*, neither of these two punishments could be constitutionally applied to appellant.[7] *See Miller*, 132 S. Ct. at 2463, 2469; *Roper*, 543 U.S. at 568, 125 S. Ct. at 1194; *Ex parte Ragston*, Nos. 14-12-01127-CR, 14-12-01128-CR, 2013 WL 2489965, at *1–2 (Tex. App.—Houston [14th Dist.] June 11, 2013, pet. filed); *Henry v. State*, No. 05-11-00676-CR, 2012

---

[7]Furthermore, under Texas law, no person may "be punished by death for an offense committed while the person was younger than 18 years." Tex. Penal Code Ann. § 8.07(c) (West 2011).

WL 3631251, at *6 (Tex. App.—Dallas Aug. 24, 2012, no pet.) (mem. op., not designated for publication).

Recognizing the problem created in cases similar to appellant's case, the legislature has recently amended the capital murder sentencing statutes to provide that if a defendant commits capital murder before turning eighteen years old and is convicted of that offense, the defendant shall be punished for life, rather than life without the possibility of parole. *See* Act of July 11, 2013, 83rd Leg., 2d C.S., S.B. 2, §§ 1–2. The new sentencing statutes take effect immediately and expressly apply to a pending criminal action, to one currently on appeal, or to one commenced on or after the day of their enactment, regardless of whether the criminal action is based on an offense before that date. *Id.* §§ 3–4.

The legislature's action has removed Texas's capital murder sentencing statutes from the express holdings of *Miller* and *Roper*. *See Miller*, 132 S. Ct. at 2463, 2469 (prohibiting the imposition of mandatory life without the possibility of parole for offenders under eighteen years old but expressly leaving open a "sentencer's ability" to impose life without the possibility of parole after considering competing factors in in appropriate cases); *Roper*, 543 U.S. at 568, 125 S. Ct. at 1194. Thus, appellant's argument, which hinges on his contention that the explicit, specific holdings in *Miller* and *Roper* preclude any constitutional

punishment that can be applied to him and that his restraint for capital murder is therefore illegal, cannot now succeed, if it ever could have.[8]

Apparently anticipating on appeal the amendment to the capital murder sentencing statutes that has now occurred, appellant also contends in his brief that such an amendment cannot be constitutionally applied to him because of the ex post facto clause in the United States Constitution. *See* U.S. Const. art. I, § 10 (stating that no state shall pass any ex post facto law). But appellant did not

---

[8]In the State's brief, which was filed before the legislature amended the sentencing statutes, it argued that the trial court had correctly denied relief because appellant had impermissibly brought an as-applied constitutional challenge in his writ application. We note that in a habeas corpus appeal in which the facts and legal issues were strikingly similar to the facts and issues involved in this appeal, one of our sister courts held, in accord with the State's argument here, that an applicant was not entitled to relief, reasoning in part,

> [A] pretrial writ of habeas corpus may not be used to address an as-applied constitutional challenge to a statute. . . .
>
> Here, Ragston does not contend that he is making a facial challenge to the constitutionality of the capital-felony sentencing statute. Nor does he challenge the capital-murder statute under which he is charged. Ragston argues only that neither death nor life in prison without parole "may be applied" to him because he was under the age of 18 at the time of the offense. But this claim, even if successful, would not result in Ragston's immediate release *because it is directed to the sentence to be imposed after conviction, not the validity of the present indictment. At this stage of the proceedings, Ragston merely stands accused of violating the penal laws. The constitutionality of the sentencing statute will become an issue only if Ragston is found guilty of the capital offense and unconstitutionally sentenced, at which time he may raise his complaint on direct appeal.*

*Ragston*, 2013 WL 2489965, at *1–3 (emphasis added) (citations omitted).

8

raise this argument in his application for a writ of habeas corpus that he filed in the trial court;[9] thus, we will not consider it in this appeal. *See State v. Romero*, 962 S.W.2d 143, 144 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ("We may not consider grounds not raised before the trial court."); *Ex parte Torres*, 941 S.W.2d 219, 220 (Tex. App.—Corpus Christi 1996, pet. ref'd); *Greenville v. State*, 798 S.W.2d 361, 362–63 (Tex. App.—Beaumont 1990, no pet.); *see also Ex parte Fuertes*, No. 02-11-00536-CR, 2013 WL 362763, at *4–5 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op., not designated for publication).[10]

Because the trial court's order denying habeas corpus relief may be sustained on a theory of law applicable to this case—the legislature's amendment of the capital murder sentencing statutes—we must affirm the trial court's order denying habeas relief. *See Primrose*, 950 S.W.2d at 778. We overrule appellant's first point.

---

[9]Appellant did not raise an ex post facto argument in his written application for a writ of habeas corpus. In the hearing on his application, his counsel stated, "[I]f [the legislature passes a statute amending the capital murder sentencing statutes], they might as well go ahead and stamp ex post facto on the bottom of it *because that's the second writ we're going to file.*" [Emphasis added.]

[10]Also, two of our sister courts have held that an ex post facto argument is an as-applied constitutional challenge that cannot be raised in a pretrial application for a writ of habeas corpus but must be litigated in the trial court and reviewed on direct appeal. *See Ex parte Howard*, 191 S.W.3d 201, 203 (Tex. App.—San Antonio 2005, no pet.); *Ex parte Woodall*, 154 S.W.3d 698, 701 (Tex. App.—El Paso 2004, pet. ref'd).

**The Reasonableness of Appellant's Bond**

In his second point, appellant contends that the trial court erred by failing to set a reasonable bond. Specifically, he argues that based on the rationale expressed in his first point, the trial court should not have set a bond for capital murder; he also argues that the amount of the bond is unjust because his written statement should not have been admitted or considered by the trial court. Appellant asserts that the trial court's admission of the statement violated articles 38.21 and 38.22 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. arts. 38.21–.22 (West 2005).

As to appellant's first argument, the reasons supporting our decision to overrule his first point are equally persuasive to overrule his second point. Because the legislature has amended the capital murder sentencing statutes to render the express holdings in *Miller* and in *Roper* inapplicable, we cannot conclude, as appellant contends, that the trial court's setting of bail impermissibly rests upon an unlawful capital murder charge.

Next, we also cannot conclude that the trial court erred by admitting appellant's written statement and by considering the statement in setting the amount of his bond. In the trial court, appellant objected to the admission of the statement on the ground that the State had not "shown any factual basis or circumstances under which it was taken to show that it was admissible." After the trial court asked the State about the relevance of the statement and admitted

10

it,[11] appellant clarified his argument that the State had not proven that the statement was voluntarily given. Although appellant did not cite articles 38.21 or 38.22 of the code of criminal procedure in the trial court to support his argument, he relies on those articles on appeal to contend that the trial court erred by admitting the statement because the "State offered absolutely no testimony or evidence . . . concerning the circumstances surrounding the acquisition of this statement."

Article 38.21 provides that a "statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. Ann. art. 38.21. Article 38.22 states, in part, that no written statement made by an accused through a custodial interrogation is admissible in any criminal proceeding unless the face of the statement shows that the accused received warnings of certain rights, including his rights to remain silent and to terminate the interview at any time. *Id.* art. 38.22, § 2(a).[12] Another part of article 38.22 provides that in "all

[11]In setting the amount of bail, a trial court may consider the nature of the offense and the circumstances under which it was committed. *See* Tex. Code Crim. Proc. Ann. art. 17.15(3) (West 2005); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd).

[12]Appellant's written statement contains, on its face, all of the warnings required by section 2(a) of article 38.22. Appellant's initials appear on the statement beside a sentence expressing that he understood each of the rights discussed in the statement and "knowingly, intelligently[,] and voluntarily waive[d] [those] rights." Appellant also affirmed in the statement that he made it on his "own free will and without promises or offers of leniency or favors, and without compulsion or persuasion by any person."

11

cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding . . . as to whether the statement was made under voluntary conditions." *Id.* art. 38.22, § 6.[13]

Assuming that articles 38.21 and 38.22 apply in proceedings relating to the setting of a bond,[14] we cannot conclude that the trial court erred by admitting the statement under those articles on the ground that the State did not present evidence proving the voluntariness of the statement. While appellant appears to argue that the State was required to present evidence concerning the voluntariness of the statement in the "face of [his] objection," the court of criminal appeals has held that the State is not "put to [a] burden" to prove voluntariness until a defendant "presents evidence that raises a voluntariness question." *Terrazas*, 4 S.W.3d at 725; *see State v. Rhinehart*, 333 S.W.3d 154, 161 n.14 (Tex. Crim. App. 2011) (citing *Terrazas* and stating that the "prosecution [is] not put to its burden to prove voluntariness unless a defendant presents evidence that raises a voluntariness question"); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (explaining that the defendant bears the initial burden of

---

[13]Along with article 38.22, substantive constitutional law prohibits the government from using an involuntary confession against an accused. *See State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

[14]In responding to appellant's second point, the State principally contends that that "neither the rules of evidence nor the state's exclusionary rule apply to bond hearings." For the reasons stated below, we will not address this argument.

12

proof when seeking to suppress evidence for a constitutional violation); *State v. Kelly*, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006) (citing *Terrazas* for the proposition that a "defendant claiming that [a] confession [is] involuntary [has the] burden to present evidence raising a voluntariness question").  In *Terrazas*, the court explained that when the defendant had not presented evidence concerning the voluntariness of a statement, the State "never assumed the burden to prove voluntariness or to controvert evidence of involuntariness, so it never assumed the risk of nonpersuasion on the voluntariness question."  4 S.W.3d at 727; *see also Williamson v. State*, Nos. 05-11-00777-CR, 05-11-00778-CR, 2013 WL 2244826, at *3 (Tex. App.—Dallas May 22, 2013, no pet. h.) (not designated for publication) ("The State is not put to its burden unless the defendant presents evidence that raises a voluntariness question.").

Here, appellant did not present any evidence in the trial court concerning voluntariness.  Thus, under *Terrazas* and the other cases cited above, we hold that the State did not have a burden to prove voluntariness and that, therefore, the trial court did not err by admitting appellant's statement.

For these reasons, we overrule appellant's second point.

**Conclusion**

Having overruled appellant's points, we affirm the trial court's order that set his bond at $750,000 and that denied the remainder of the relief that he sought in his application for a writ of habeas corpus.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

PUBLISH

DELIVERED:  August 22, 2013