

# NUMBER 13-20-00291-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE K.W.

### On appeal from the 19th District Court
### of McLennan County, Texas.

# OPINION[1]

### Before Justices Longoria, Hinojosa, and Silva
### Opinion by Justice Hinojosa

This is an interlocutory appeal that arises from the denial of an application for a

pretrial writ of habeas corpus seeking a personal bond. By five issues, appellant K.W.[2]

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] Because this is a pretrial application for writ of habeas corpus, the appellate court in its discretion elects to refer to the applicant by his initials. *See Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.— Corpus Christi–Edinburg 2018, no pet.) (noting that the comment to Texas Rule of Appellate Procedure 9.8

argues that: (1) grand jury meetings are not "court proceedings" for the purposes of Texas Government Code § 22.0035(b); (2) the State cannot announce ready on a void indictment under Texas Code of Criminal Procedure article 17.151; and (3–5) the Texas Supreme Court's Twelfth Emergency Order, Texas Governor Greg Abbott's Executive Order GA-13, and the McLennan County Local Standing Order, all enacted during the COVID-19 pandemic and in place at the time of K.W.'s detainment, are unconstitutional. We affirm.

## I.   BACKGROUND FACTS

On February 16, 2020, K.W. was arrested for the capital murder of JoAngel Elias Ortegon, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.03. According to the arrest warrant affidavit, K.W. entered a habitation at 1903 Trice Avenue in Waco, Texas with another man, where they found Ortegon and Carson Elias playing video games. According to Elias, K.W. allegedly told the men "you're not going to like this" and began firing a weapon. Ortegon was killed and Elias was injured. K.W. allegedly told a detective that he went to the home with the intent to commit a robbery but was forced to use his weapon when he was fired upon first.

Beginning in March of 2020, the State of Texas instituted numerous orders to protect Texans from the deadly COVID-19 pandemic. This included the Texas Supreme Court's April 27, 2020, "Twelfth Emergency Order Regarding the COVID-19 State of Disaster," THE TEXAS SUPREME COURT, *Twelfth Emergency Order Regarding COVID-19*,

---

does "not limit an appellate court's authority to disguise parties' identities in appropriate circumstances . . .").

2

629 S.W.3d 144 (Tex. Apr. 27, 2020). The supreme court referred to Texas Government Code § 22.0035(b) in its Twelfth Emergency Order, which grants it authority to modify court rules in disaster situations:

> Notwithstanding any other statute, the supreme court may modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor. An order under this section may not extend for more than 90 days from the date the order was signed unless renewed by the chief justice of the supreme court.

TEX. GOV'T CODE ANN. § 22.0035(b). In the emergency order, the supreme court allowed anyone involved in any court proceeding, "including but not limited to a party, attorney, witness, court reporter, or grand juror[,] . . . to participate remotely, such as by teleconferencing, videoconferencing, or other means . . . ."

On May 6, 2020, within ninety days of K.W.'s arrest, a McLennan County grand jury authorized under the Texas Supreme Court's Twelfth Emergency Order indicted K.W. for capital murder in Cause Number 2020-596-C1. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151, §1(1). The grand jury was comprised of six "in-person" jurors and six jurors who participated remotely by Zoom.

On May 18, 2020, ninety-two days after his arrest, K.W. filed his original application for writ of habeas corpus. In his application, K.W. asserted that the Twelfth Emergency Order was unconstitutional because it purported "to suspend the constitutional requirements of a grand jury quorum to return indictments; the common law requirement of grand juror[ ] in[-]person attendance; and allow[ed] unauthorized persons into grand jury deliberations . . . ." K.W. further asserted that the indictment was therefore invalid and his confinement and restraint were illegal because the State was not ready for trial

3

within ninety days from the commencement of his detention. *See id.*

On May 26, 2020, while K.W. was still incarcerated, he was reindicted for the capital murder offense by a grand jury empaneled entirely in-person. *See* TEX. PENAL CODE ANN. § 19.03. K.W. was further indicted for the offense of aggravated robbery of Elias in Cause Number 2020-607-C1. *See id.* § 29.03.

The trial court conducted a hearing on K.W.'s habeas application on May 29, 2020. After the hearing, the trial court adopted the following findings of facts and conclusion of law:

1.  Applicant was arrested on a charge of Capital Murder on February 16, 2020.

2.  Applicant's detention on the Capital Murder allegation began that date.

3.  Applicant was indicted on May 6, 2020[,] by the grand jury of McLennan County for the offense of Capital Murder in Cause Number 2020-[ ]596-C1.

4.  Applicant was re[]indicted on May 26, 2020[,] by the grand jury of McLennan County for the offense of Capital Murder in the same cause number.

5.  Applicant was indicted on May 26, 2020[,] by the grand jury of McLennan County for the offense of Aggravated Robbery in Cause Number 2020-607-C1.

6.  Applicant was arrested on the Aggravated Robbery allegation on May 20, 2020.

7.  Applicant's detention on the Aggravated Robbery allegation began that date.

8.  On March 23, 2020, this Court entered a Standing Order applicable to all cases extending the period in Tex. Code of Crim. Pro. [sic] Article 17.151 from 90 days until 120 days. See State's Exhibit #1.

4

9.   As of the date of the hearing, May 29, 2020, approximate[ly] 104 days ha[ve] elapsed from the date that Applicant was initially detained on the allegation of Capital Murder indicting in Cause Number 2020-5[96]-C1.

10.  The time period under Article 17.151 as modified by this Court's standing order has not expired.

11.  Governor Abbott issued an executive order on March 29, 2020[,] which suspended the operation of Article 17.151 in order to prevent any person's automatic release on personal bond because the State is not ready for trial.

12.  Governor Abbott's March 29, 2020 order also prohibits trial courts from releasing any person currently arrested for a crime that involves physical violence on personal bonds. See EO-GA-13.

13.  Applicant is currently arrested for the offenses of Capital Murder and Aggravated Robbery. Both offenses involve physical violence.

14.  The Governor's order does not violate the Constitutions of the United States or of the State of Texas.

15.  During the hearing on this Application, the State announced that it had been ready at the time of the return of the indictment on May 6, 2020.

16.  Applicant failed to present sufficient evidence to rebut the State's retrospective announcement of readiness.

17.  This Court finds that the State was ready on May 6, 2020.

18.  Six out of the twelve grand jurors at the meeting on May 6, 2020 appeared through videoconferencing.

19.  This Court authorized grand jurors to appear through video conferencing at the meeting on May 6, 2020.

20.  The Texas Supreme Court authorized trial courts to allow grand jurors to appear remotely in their Twelfth Emergency Order issued on April 27, 2020.

21.     The State's reliance on this Court's authorization for the remote appearance of grand jurors and the Twelfth Emergency Order was reasonable.

22.     There is no evidence of bad faith on part of the State.

23.     Pursuant to Ex parte Brosky, 863 S.W.[2]d 775 (Tex. App.—Fort Worth, 1993); Behrend v. State, 729 S.W.2d 717 (Tex. Crim. App. 1987)[;] and Ward v. State, 659 S.W.2d 643 (Tex. Crim. App. 1983[) (en banc)][3], the State was "ready" as contemplated under 17.151 on May 6, 2020[,] regardless of the validity of the indictment returned.

24.     The appearance of the grand jurors remotely did not violate the Constitutions of the United States or of the State of Texas.

25.     The Twelfth Emergency Order by the Texas Supreme Court does not violate the Constitutions of the United States or of the State of Texas.

26.     The indictment returned by the Grand Jury on May 6, 2020 was returned by a quorum of a lawfully impaneled Grand Jury and is therefore valid.

27.     Applicant's detention on the Aggravated Robbery beginning on May 20, 2020 constitutes "another allegation" pursuant to Article 17.151.

28.     Applicant is currently detained on "another allegation" in which the deadline under 17.151 has not expired. See Martinez v. State, 810 S.W.2d 428 (Tex. App.—Houston [14th Dist.] 1991, pet. [ref'd]) [sic].

29.     Applicant is not entitled to a personal bond pursuant to Article 17.151.

On June 1, 2020, K.W. appealed the denial of his pretrial application for writ of habeas corpus.

## II.     STANDARD OF REVIEW

An applicant may seek pretrial habeas corpus relief "only in very limited circumstances." *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005) (per

---

[3] We note that this case was overruled by *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991).

6

curiam). The purpose of an application for writ of habeas corpus is to remove an illegal restraint on an applicant's liberty. *See* TEX. CODE CRIM. PROC. ANN. art. 11.01. Thus, pretrial habeas relief—"an extraordinary remedy"—is reserved for cases in which resolution of a legal issue in the applicant's favor must result in the applicant's immediate release. *See Ex parte Ingram*, 533 S.W.3d 887, 891–92 (Tex. Crim. App. 2017); *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016). Here, K.W.'s pretrial application for writ of habeas corpus was to challenge the trial court's denial of bail on a personal bond. *See Ex parte Smith*, 178 S.W.3d at 801.

"We review a trial court's denial of habeas corpus relief for an abuse of discretion." *Ex parte Walsh*, 530 S.W.3d 774, 778 (Tex. App.—Fort Worth 2017, no pet.). Appellate courts must uphold the trial court's judgment if it is correct on any theory of law applicable to the case. *Id*. (citing *Ex parte Evans*, 410 S.W.3d 481, 484 (Tex. App.—Fort Worth 2013, pet. ref'd). "If we conclude the grounds asserted in the application for writ of habeas corpus are not cognizable, then we must affirm the trial court's denial of relief." *Id*. (citing *Ex parte Schoolcraft*, 107 S.W.3d 674, 676 (Tex. App.—San Antonio 2003, no pet.)). A writ applicant bears the burden of proving the facts entitling him to relief. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim App. 1993).

### III.    THE GRAND JURY EMPANELMENT AS "COURT PROCEEDING"

By his first issue, K.W. contends that grand jury panels are not "court proceedings" and thus should not have been subjected to the Texas Supreme Court's Twelfth Emergency Order.

## A. Applicable Law

The Texas Constitution provides that: "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury . . . ." TEX. CONST. art. I, § 10. It further establishes that, "[g]rand and petit juries in the [d]istrict [c]ourts shall be composed of twelve persons, except that petit juries in a criminal case below the grade of felony shall be composed of six persons; but nine members of a grand jury shall be a quorum to transact business and present bills." TEX. CONST. art. V, § 13.

In its Twelfth Emergency Order, the Texas Supreme Court referred to Texas Government Code § 22.0035(b), which sets forth that:

> Notwithstanding any other statute, the supreme court may modify or suspend procedures for the conduct of any *court proceeding* affected by a disaster during the pendency of a disaster declared by the governor. An order under this section may not extend for more than 90 days from the date the order was signed unless renewed by the chief justice of the supreme court.

TEX. GOV'T CODE ANN. § 22.0035(b) (emphasis added). The provision of the emergency order that K.W. specifically objects to is as follows:

> (3) Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent . . . (b) Allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, or *grand juror*, but not including a petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means . . . .

629 S.W.3d at 144 (emphasis added). Under this authority, the McLennan County District Attorney's Office authorized a hybrid grand jury of both "in-person" and remote Zoom grand jurors to indict K.W. for capital murder.

8

**B.    Analysis**

K.W. contends that grand jury empanelments are not "court proceedings"; thus, the Twelfth Emergency Order should not have applied. K.W. asserts that because "[a] grand jury's actions pre-date the commencement of court proceedings, and no judge presides to monitor the grand jury," the assembly of a grand jury cannot be an extension of the court. *See United States v. Calandra*, 414 U.S. 338, 343 (1974). Citing *Gunville v. Gonzales*, K.W. argues that in its day-to-day functioning, the grand jury operates independently of the court. *See* 508 S.W.3d 547, 563 (Tex. App.—El Paso 2016, no pet.). "The grand jury belongs to no branch of government, but rather serves 'as a kind of buffer or referee between the Government and the people.'" *Id*. (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992)). "The court has often emphasized the role of a grand jury as an independent body which acts as check on prosecutors." *Id.* at 563–64 (citing *United States v. Mandujano*, 425 U.S. 564, 571 (1976) (plurality op.)). Accordingly, K.W. contends that grand jury proceedings were not "court proceedings" under the Twelfth Emergency Order, and McLennan County did not have authority to impanel a hybrid grand jury with grand jurors participating in-person and via teleconferencing.

The State, on the other hand, contends that the Twelfth Emergency Order encompasses a grand jury empanelment as a "court proceeding." In *Ex parte Edone*, the Texas Court of Criminal Appeals held that, "the grand jury is very connected to the court which impaneled it." 740 S.W.2d 446, 448 (Tex. Crim. App. 1987). "The court exercises supervisory power over the grand jury whether by impaneling, re-assembling, qualifying, quashing subpoenas, or aiding investigation." *Id.*; *see also Hott v. Yarbrough*, 245 S.W.

676 (Tex. [Comm'n App.] 1922) ("That the grand jury is an arm of the court, and a part of the judicial system for the administration of the criminal law, is not open to question."). Although it operates independently, the grand jury is "often characterized as an arm of the court by which it is appointed rather than an autonomous entity." *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd).

We agree with the State that the phrase "court proceeding" encompassed grand jury empanelments. The grand jurors were summoned and organized by the McLennan County court system to continue the administration of justice during a deadly pandemic. Accordingly, we conclude that the trial court did not abuse its discretion in denying habeas relief because the State had authority to convene a hybrid grand jury with some jurors participating in-person and others participating via videoconferencing, or Zoom.[4] *Ex parte Walsh*, 530 S.W.3d at 778. We overrule this issue.

## IV.    ARTICLE 17.151 AND THE STATE'S ANNOUNCEMENT OF READY

By his second issue, K.W. contends that the State was not ready within ninety days of the return of that indictment, in violation of article 17.151 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151, §1(1). Article 17.151 of the Texas Code of Criminal Procedure requires a reduction of bond if the State is not ready

---

[4] K.W. urges us to consider *Ex parte Tucker*, a case from our sister court in Austin, which held that "subsection 22.0035(b)'s authorization of modifications and suspensions to procedures for conducting 'court proceedings' d[id] not apply to preindictment jail detentions in article 17.151," and he asserts that "the same or similar reasoning applies here." *See* No. 03-20-00372-CR, 2020 WL 7776448, at *7 (Tex. App.—Austin Dec. 31, 2020, no pet.) (mem. op., not designated for publication). *Tucker* can be distinguished in a significant way, though: in *Tucker*, there was no indictment within ninety days of arrest. *See id.*; *see also Ex parte Boyd*, No. 03-20-00395-CR, 2022 WL 1144707, at *3 (Tex. App.—Austin Apr. 18, 2022, no pet. h.) (mem. op., not designated for publication) (same); *Ex parte Larue*, No. 12-20-00269-CR, 2021 WL 2816412 (Tex. App.—Tyler June 30, 2021, no pet.) (mem. op., not designated for publication) (same). In the case at bar, a grand jury convened within ninety days, albeit in a hybrid manner. In other words, here, K.W. knew the charges for which he was being detained. *See* TEX. CONST. art. I, § 10.

10

for trial:

> [A] defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within . . . 90 days from the commencement of his detention if he is accused of a felony.

*Id*. K.W. argues that the State could not be ready for trial ninety days after he was arrested because the indictment was invalid for reasons discussed *supra*.

Texas law, however, provides that the State can announce "ready" even if an indictment is defective, provided that the State proceeds in good faith. *See Carr v. State*, 733 S.W.2d 149, 152 (Tex. Crim. App. 1984); *Ex parte Brosky*, 863 S.W.2d 775, 778 (Tex. App.—Fort Worth 1993, no pet.). Case law interpreting the Speedy Trial Act guides us in this regard. *See Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991) ("As the court of appeals noted, this Court 'has indicated that cases decided under the Speedy Trial Act (article 32A.02) are instructive on procedures under article 17.151'"); *Carr*, 733 S.W.2d at 152; *Ex parte Brosky*, 863 S.W.2d at 778; *see also Ex parte Tucker*, No. 03-20-00372-CR, 2020 WL 7776448, at *5 n.7 (Tex. App.—Austin Dec. 31, 2020, no pet.) (mem. op., not designated for publication) (considering a pretrial application for writ of habeas corpus where defendant had not been indicted within ninety days, the Austin appellate court held that, "[c]ases decided under the former Speedy Trial Act are instructive as to procedures under article 17.151").

In *Ex parte Brosky*, the Fort Worth appellate court held that "[t]he question of the State's 'readiness' within the statutory limits refers to the preparedness of the prosecution for trial." 863 S.W.2d at 778 (citing *Behrend v. State*, 729 S.W.2d 717, 720 (Tex. Crim.

11

App. 1987)). The court elaborated that the concept of readiness does not require that the State have a perfect indictment. *Id.* "In fact, where there is no showing of bad faith, the State may be prepared for trial even though the indictment that forms the basis for the prosecution of the offense is so defective as to be void." *Id. Ex parte Brosky* further held:

> When a defendant complains the State was not ready within the statutory time period, the State had the burden to make a *prima facie* showing that it was. The State may satisfy its burden either by announcing ready within the allotted time or by announcing retrospectively that it had been ready within the allotted time. Once the State makes its *prima facie* showing, the burden shifts to the defendant to rebut it. In the absence of a sufficient rebuttal, the trial court has the discretion to find the State was timely ready for trial.

*Id.* (internal citations omitted).

There is no "bright line rule" regarding how the State can prove its readiness. *See id.* Here, at the habeas hearing, the prosecutor announced that "the State was ready within 90 days." *See Dixon v. State*, 866 S.W.2d 115, 116 (Tex. App.—Waco 1993, no pet.) ("[U]nder article 17.151, the State may prove that it was ready within the applicable time period by 'announcing within the allotted time that it is ready, or by announcing retrospectively that it had been ready within the allotted time.[']"). The State informed the judge that it had a witness—Elias—who could testify regarding what occurred at the Trice house, and further, that K.W. had "confessed." The prosecutor stated that K.W. "admitted" that he "walked into an apartment with the intent to rob that apartment, but he had two guns in his hand . . . a gun in his right hand and a gun in his left hand." K.W. offered nothing in response to rebut the State's announcement of ready. *See Jones*, 803 S.W.2d at 718 ("Evidence that rebuts a prima facie showing of readiness 'may consist of, among other things, a demonstration that the state did not have a key witness or piece of

12

evidence available by the last day of the applicable time limit so that the state was not ready for trial within that time limit.'").

Assuming for the sake of argument the initial indictment was defective because the grand jury met in a hybrid manner, we conclude that the State proceeded in good faith. *See id*. The State relied upon the authority of the Texas Supreme Court's Twelfth Emergency Order to convene a grand jury that partially participated remotely. *See Twelfth Emergency Order*, 629 S.W.3d at 144. The State also met its burden by announcing that it was ready for trial within the allotted ninety-day period under article 17.151. *See Ex parte Brosky*, 863 S.W.2d at 778; *see also* TEX. CODE CRIM. PROC. ANN. art. 17.151. The State informed the court of the type of evidence it had to prove its case, such as a confession and witness statements, and K.W. did not rebut these assertions. *See Ex parte Brosky*, 863 S.W.2d at 778; *see also Ex parte Garner*, No. 10-19-00120-CR, 2019 WL 4072067, at *2 (Tex. App.—Waco Aug. 28, 2019, no pet.) (mem. op., not designated for publication) (concluding the trial court did not abuse its discretion in denying petitioner's release and "the readiness requirements of Article 17.151 are satisfied" where "the State was ready or prepared to go to trial and in good faith was ready to attempt with witnesses or evidence to persuade a jury of the offense within the time limitations"). In light of the foregoing, the trial court did not abuse its discretion in denying K.W.'s application for writ of habeas corpus. *See Ex parte Walsh*, 530 S.W.3d at 778. We overrule K.W.'s second issue.

## V. CONSTITUTIONAL ISSUES

K.W.'s third through fifth issues contest the constitutionality of the Twelfth

Emergency Order, Texas Governor Greg Abbott's Executive Order GA-EO-13, and the McLennan County Local Standing Order, all in effect at the time of K.W.'s pending capital murder charge. We will address each emergency order in turn.

## A. The Twelfth Emergency Order

### 1. Separation of Powers

K.W. asserts three constitutional challenges against the Twelfth Emergency Order. First, he argues that the Twelfth Emergency Order violates the separation of powers doctrine in that it improperly "suspended" the operation of article 17.151. *See* TEX. CONST. art. I, § 28 ("No power of suspending laws in this State shall be exercised except by the Legislature."); TEX. CODE CRIM. PROC. ANN. § 17.151. The State argues, however, that no deadlines or rights were suspended in entirety under this order; instead, the order modified or extended existing procedural rules so that the justice system could continue to function safely during the pandemic in accordance with § 22.0035(b) of the government code. *See* TEX. GOV'T CODE ANN. § 22.0035(b).

We agree with the State. The Texas Supreme Court has previously used the authority granted to it under the government code to extend legal deadlines during natural disasters or emergencies.[5] *See In re C.M.J.*, 573 S.W.3d 404, 409 (Tex. App.—Houston

---

[5] We find the following language from *Ex parte Boyd*, an unpublished opinion from the Austin Court of Appeals, helpful in this analysis. *See* No. 03-20-00395-CR, 2022 WL 1144707, at *5 (Tex. App.—Austin Apr. 18, 2022, no pet. h.) (mem. op., not designated for publication). Regarding Texas Government Code § 22.0035(b), the appeals court noted:

> The statute was passed in response to the devastation wrought by Hurricane Harvey in 2017. Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 40, 86th Leg., R.S. (2019). Harvey and other "extreme weather events . . . delayed judicial proceedings and disrupted the operation of the state's judicial system due to damaged, unusable court buildings." Senate Comm. on the Judiciary & Civil Jurisprudence, Bill Analysis, Tex. S.B. 40, 86th Leg., R.S. (2019). The statute was intended to address calls for conferring additional authority on the courts to safely and practicably conduct proceedings by "authorizing

[1st Dist.] 2019, pet. denied) (approving a district court's delay in complying with a mandatory statutory deadline in a parental-termination order because the delay was supported by a valid exercise of the Texas Supreme Court's authority under § 22.0035(b) following Hurricane Harvey); *In re M.T.R.*, 579 S.W.3d 548, 566 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (recognizing that the emergency order issued by the Texas Supreme Court in response to Hurricane Harvey allowed the trial court to extend the dismissal date of the suit). The Texas Court of Criminal Appeals has also recognized that mandatory statutory deadlines can be extended under emergency orders, even in the habeas context. *See In re Salinas*, No. WR-91, 139-01, ___ S.W.3d ___, 2020 WL 3635898, at *1 (Tex. Crim. App. July 1, 2020, order) (per curiam); *see also In re Hancock*, No. WR-31,789-04, 2020 WL 2049111, at *1 (Tex. Crim. App. Apr. 29, 2020) (per curiam) (not designated for publication) (recognizing that the first joint emergency orders of the Supreme Court and the Court of Criminal Appeals during COVID-19 extended deadlines to file article 11.07 applications for writs of habeas corpus); *In re Henderson*, No. WR-

---

judges to designate alternate sites to conduct proceedings and by extending the maximum duration of an order to suspend or modify procedures for cases following such disasters." *Id.*

That the emergency orders were likewise intended to address the disruption to physical infrastructure resulting from the COVID-19 pandemic is evident in the nature of the additional measures for which the Texas Supreme Court vested courts with authority. Under the Twelfth Emergency Order, to limit the transmissibility of the virus in court facilities, Texas courts were empowered to allow parties, attorneys, witnesses, court reporters, and grand jurors to participate remotely; to "conduct proceedings away from the court's usual location"; to require participants in proceedings to alert the court if a participant was experiencing COVID-19 or flu-like symptoms; or to "[t]ake any other reasonable action to avoid exposing *court proceedings* to the threat of COVID-19." *Twelfth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d at 144–45 (emphasis added).

*See id.* at *5.

56,883-25, 2020 WL 2049112 (Tex. Crim. App. Apr. 29, 2020) (per curiam) (not designated for publication) (same).

Most significantly and in direct contravention to K.W.'s claims on appeal, the court of criminal appeals has concluded that the emergency orders only address "procedural matters" and do not "purport to authorize courts to modify substantive rights." *In re State ex rel. Ogg*, 618 S.W.3d 361, 364 (Tex. Crim. App. 2021). Thus, having reviewed the emergency order and relevant case law, we conclude the deadlines surrounding defendant detainment and mandated release under article 17.151 were not "suspended" by the Twelfth Emergency Order as K.W. claims. *See* TEX. CONST. art. I, § 28; TEX. GOV'T CODE ANN. § 22.0035(b). There was no violation of the separation of powers doctrine in this context.

### 2. In-Person Requirement

Second, K.W. argues that the order violates the in-person grand jury requirements. K.W., however, cites to no authority, nor have we found any, that sets forth that the grand jury quorum must be physically present. We note, in fact, that in the context of Sixth Amendment case law interpreting the right to confrontation, videoconferencing has been allowed in limited situations. *See* U.S. CONST. amend. VI; *Maryland v. Craig*, 497 U.S. 836 (1990). In *Craig*, the United States Supreme Court held that although face-to-face confrontation forms the core of the Confrontation Clause's values, it is not an indispensable element of the confrontation right. *Id.* at 847. The *Craig* court recognized that the use of technology in child abuse cases, allowing complainants to testify via remote technology, still satisfied the constitutional purpose of the Sixth Amendment. *See*

16

*id*. Similarly, in the case at bar, the use of remote technology allowed the grand jurors to fulfill their civic duty during a deadly pandemic in a safe and productive way. TEX. CONST. art. I, § 10. Because we find no authority requiring grand jurors to convene in-person, we overrule this sub-issue.

### 3. Quorum Requirements

Third, K.W. contends that the Twelfth Emergency Order violates statutory quorum requirements in that it allowed unauthorized persons to participate in grand jury deliberations. There was no evidence in the record, however, that any unauthorized persons participated in or influenced the grand jury. "[A]n appellate court's review of the record is generally limited to the evidence that was before the trial court at the time of the trial court's ruling." *Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007). We decline to speculate on a matter that was not supported by the evidence in the record. We overrule this sub-issue.

## B. Texas Governor Greg Abbott's Executive Order GA-13

Governor Abbott's Executive Order GA-13 (GA-EO-13) suspended the operation of Texas Code of Criminal Procedure article 17.151. *See* The Governor of the State of Tex., Exec. Order No. GA-13, March 29, 2020, 45 Tex. Reg. 2368, 2369 (2020); *see also* TEX. CODE CRIM. PROC. ANN. art. 17.151. It also suspended article 17.03 which prohibits courts from releasing violent offenders on personal bonds. *See* TEX. CODE CRIM. PROC. ANN. art. 17.03; *see also Ex parte Lanclos*, 624 S.W.3d 923, 927 (Tex. Crim. App. 2021) (observing the effect of the executive order). In his appeal, K.W. contends that GA-EO-13: (1) violates the due process clauses of both the U.S. and Texas constitutions; (2)

violates the bail provisions of both U.S. and Texas constitutions; (3) violates the separation of powers clause of the Texas constitution; (4) unconstitutionally usurps the Legislature's suspension of law power; and (5) was unconstitutionally vague.

We note, however, that K.W. did not object to GA-EO-13 in his original application for writ of habeas corpus. Because this is an argument he first raises on appeal, we cannot address it as the trial court did not have the opportunity to consider it. *See* TEX. R. APP. P. 33.1; *Ex parte Young*, 257 S.W.3d 276, 277 (Tex. App.—Beaumont 2008, no pet.) ("No appeal lies from the refusal to issue a writ of habeas corpus unless the trial court rules on the merits of the application."). We conclude this sub-issue has been waived.

## C.    McLennan County Local Standing Order

K.W. also claims that the McLennan County Local Standing Order in place at the time of his arrest, which modified article 17.151 from "90 days" to "120 days" from the commencement of the defendant's detention if the defendant was accused of a felony, was also unconstitutional. K.W. acknowledges, however, that "even if it was constitutional, it [did] not apply to May grand jury proceedings based on the plain language of the Order."

Again, we note that K.W. did not object to the McLennan County Local Standing Order in his original pretrial application for writ of habeas corpus. *See* TEX. R. APP. P. 33.1; *Ex parte Young*, 257 S.W.3d at 277. We thus overrule this sub-issue as waived, as the trial court did not have the opportunity to consider this argument. *See* TEX. R. APP. P. 33.1; *Ex parte Young*, 257 S.W.3d at 277.

18

**D.  Conclusion**

We overrule K.W.'s constitutional challenges regarding the Twelfth Emergency Order. Further, because K.W.'s issues regarding GA-EO-13 and the McLennan County Standing Order were not preserved for our review, they are overruled as waived.

## VI.  CONCLUSION

We affirm the trial court's order.

LETICIA HINOJOSA
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
12th day of May, 2022.