

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-23-00327-CR

**EX PARTE** Martin **MARCOS-CALLEJAS**

From the County Court, Jim Hogg County, Texas
Trial Court No. 1034C
Honorable Greg Perkes, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: May 15, 2024

REVERSED AND REMANDED

Appellant, Martin Marcos-Callejas, appeals the trial court's order denying his request for habeas relief. For the reasons stated below, we reverse the trial court's order denying habeas relief and remand the cause to the trial court with instructions to discharge Marcos-Callejas from bail and dismiss the information in the underlying proceeding with prejudice.

## BACKGROUND

On March 6, 2021, Governor Greg Abbott directed the Texas Department of Public Safety ("DPS") to initiate Operation Lone Star ("OLS") and "devote additional law enforcement resources toward deterring illegal border crossing and protecting [] border communities." He further directed "DPS to use available resources to enforce all applicable federal and state laws to

prevent criminal activity along the border, including criminal trespassing, smuggling, and human trafficking, and to assist Texas counties in their efforts to address those criminal activities."

As part of OLS, Marcos-Callejas, a noncitizen, was arrested on October 10, 2022, in Jim Hogg County and charged by information with the misdemeanor offense of criminal trespass. *See* TEX. PENAL CODE ANN. § 30.05(a). The case was filed in the County Court in Jim Hogg County and assigned cause number 5875.

Marcos-Callejas then filed a pretrial application for writ of habeas corpus, seeking dismissal of the criminal charge based on alleged violations of his state and federal rights to equal protection.[1] Specifically, Marcos-Callejas argued the State of Texas had engaged in selective prosecution by choosing, as part of OLS, to prosecute men for criminal trespass but not to prosecute similarly-situated women for the same offense, thereby violating the United States Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment. *See* U.S. CONST. amend. XIV; TEX. CONST. art. 1, § 3a.

On February 9, 2023, the trial court held a hearing on Marcos-Callejas's habeas writ. In support of his habeas application, Marcos-Callejas called Trace Segundo, an assignments coordinator for the Lubbock Private Defenders' Office, as a witness. Segundo testified that, as of October 11, 2022, there had been 550 criminal trespassing cases in Jim Hogg County related to OLS. She further testified that, although women had been found on private property with men who were later charged with criminal trespass, no women had been arrested for or charged with criminal trespass, and there were no "women defendants for criminal trespass."

---

[1] Marcos-Callejas also sought dismissal of the criminal charge based on the State's alleged violation of his Sixth Amendment rights to trial and to counsel. Marcos-Callejas does not, however, argue his Sixth Amendment claim in his appeal and specifically states, in his appellate brief, that he "is not pursuing this claim on appeal," so we will not consider it.

Marcos-Callejas also called DPS Trooper Saul Leal, Jr. as a witness in the hearing. The trooper testified that, in OLS cases as of October 2022, women who were found in groups of persons alleged to be trespassing were released to Border Patrol. He further testified that on October 10, 2022, he encountered six persons on private property in Jim Hogg County, including five males and one female. The five males were arrested and transported to the Jim Hogg Detention Center, but the trooper did not get any contact or identifying information for the female, who "was given to Border Patrol custody." Finally, the trooper testified that, as of October 2022, it was DPS policy as part of OLS to arrest men, but not women, for the offense of criminal trespass.

Upon the conclusion of Marcos-Callejas's evidence, the trial court inquired whether the State had any witnesses to call. The State did not call any witnesses at the hearing.

After the hearing, the trial court denied Marcos-Callejas's request for relief. Specifically, the trial court issued an order stating, "Having considered the application and the evidence presented, this Court holds that Mr. Marcos-Callejas is not entitled to relief." The trial court did not make specific findings of fact.

Marcos-Callejas timely appealed.

## DISCUSSION

On appeal, Marcos-Callejas argues the trial court erred in denying his requested relief because (1) he properly raised his equal-protection challenge to his prosecution in a pretrial writ of habeas corpus, (2) he established a prima facie claim of selective prosecution in violation of his right to equal protection, and (3) the State failed to justify its discriminatory conduct.

### A. Standard of Review

When reviewing a trial court's decision to grant or deny a habeas applicant's request for pretrial habeas relief, we defer to the trial court's assessment of the facts and will uphold the trial court's ruling absent an abuse of discretion. *Ex parte Vazquez-Bautista*, 683 S.W.3d 504, 510 (Tex.

App.—San Antonio 2023, pet. filed) (citing *Ex parte Perusquia*, 336 S.W.3d 270, 274–75 (Tex. App.—San Antonio 2010, pet. ref'd); *Ex parte Quintana*, 346 S.W.3d 681, 684 (Tex. App.—El Paso 2009, pet. ref'd)). Specifically, we "defer to the trial court's implied factual findings that are supported by the record." *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006). "We afford almost total deference to the trial court's determination of historical facts that are supported by the record, and to mixed questions of law and fact, when the resolution of those questions turn[s] on evaluations of credibility and demeanor." *Perusquia*, 336 S.W.3d at 275 (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007)). But "[i]f the resolution of the ultimate question turns on an application of the law, we review the determination de novo." *Id.* (citing *Peterson*, 117 S.W.3d at 819). Finally, "[w]e will uphold the trial court's judgment as long as it is correct on any theory of law applicable to the case." *Ex parte Evans*, 410 S.W.3d 481, 484 (Tex. App.—Fort Worth 2013, pet. ref'd).

### B. Marcos-Callejas Effectively Presented a Selective-Enforcement Claim

While courts—including, at times, this court—deploy the terms "selective prosecution" and "selective enforcement" interchangeably, "selective prosecution" and "selective enforcement" are distinct claims. *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) ("Selective prosecution is not selective enforcement."); *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017) (stating that courts "sometimes deploy [these terms] interchangeably" and recognizing they are distinct claims); *Kuiken v. Cnty. of Hamilton*, 669 F.Supp.3d 119, 126 n.3 (N.D.N.Y. 2023) ("A selective enforcement claim is also referred to as a selective prosecution claim."). "Selective prosecution occurs when, from among the pool of people referred by police, a prosecutor pursues similar cases differently based on" an impermissible consideration. *Conley v. United States*, 5 F.4th 781, 789 (7th Cir. 2021); *see Washington*, 869 F.3d at 214 ("'Prosecution'

- 4 -

refers to the actions of prosecutors (in their capacity as prosecutors).”). Selective enforcement occurs when law enforcement officials make decisions regarding who to investigate, arrest, or refer for potential prosecution based on an impermissible consideration such as race or gender. *See Conley*, 5 F.4th at 789; *Washington*, 869 F.3d at 214; *Reynolds v. Huddleston*, No. CV 21-01925-DMG (Ex), 2023 WL 8114834, at *11 n.17 (C.D. Cal. July 17, 2023). “Hence, with selective enforcement, ‘the constitutional problem … precede[s] the prosecutor’s role.’” *Conley*, 5 F.4th at 789 (quoting *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015)).

Here, Marcos-Callejas referred to his claim as a selective-prosecution claim throughout his habeas application and argued that the trial court should grant relief on “the Selective Prosecution writ.” Marcos-Callejas also, however, argued that “the State has chosen to selectively enforce its trespass prohibition based on the sex of the defendant”; provided evidence showing that DPS troopers arrested and charged men for criminal trespass but did not arrest or charge women for that offense, instead referring the women to the United States Border Patrol; and argued that, “[b]ecause he is not a woman, he has been charged with criminal trespass as part of OLS.” Moreover, Marcos-Callejas demonstrated, at the hearing on his habeas application, that women were detained for criminal trespassing but were neither arrested nor charged with a criminal offense; rather, women who were detained related to OLS operations for the offense of criminal trespass were either directly taken into custody by federal law enforcement officials or released by State law enforcement officials to federal custody. Thus, by showing that men were arrested and charged with criminal trespass but women were not, Marcos-Callejas effectively presented a selective-enforcement claim, not a selective-prosecution claim. *E.g.*, *Conley*, 5 F.4th at 789; *Reynolds*, 2023 WL 8114834, at *11 n.17 (construing claim as selective-enforcement claim, rather

than selective-prosecution claim, because claim was based on referral of charges to district attorney). We will therefore refer to the claim as a selective-enforcement claim.[2]

### C. Marcos-Callejas's Selective-Enforcement Equal Protection Claim Is Cognizable in a Pretrial Application for Writ of Habeas Corpus

Marcos-Callejas argues, in his appellate brief, that he "properly raised his as-applied equal protection challenge in a pretrial writ of habeas corpus." The State, however, argues that Marcos-Callejas's "claim is not cognizable in a pre-trial *habeas corpus* proceeding" and that "the appeal should be dismissed."

In *Ex parte Aparicio*, 672 S.W.3d 696 (Tex. App.—San Antonio 2023, pet. granted), we determined that a "selective-prosecution claim on the basis of equal protection is the type of claim 'in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" *Aparicio*, 672 S.W.3d at 713 (quoting *Ex parte Ingram*, 533 S.W.3d 887, 891–92 (Tex. Crim. App. 2017)). We therefore held that a selective-prosecution equal protection claim is cognizable in a pretrial habeas proceeding. *Id*.

Marcos-Callejas's claim is virtually identical to the appellant's claim in *Aparicio*. *Id*. at 701–06, 714–15. Moreover, both selective-prosecution claims and selective-enforcement claims assert that the State has instituted criminal proceedings against a defendant for an impermissible purpose, "[s]ubstantive claims of selective prosecution and selective enforcement are generally evaluated under the same two-part test," and there is no practical difference between selective-prosecution and selective-enforcement claims for purposes of cognizability in a pretrial habeas

---

[2] We note that the parties' use of the term selective prosecution has engendered some confusion in this case. For example, the State attempted to elicit testimony at the hearing, during its cross-examinations of Trace Segundo and Trooper Leal, to show that the county attorney's office had a policy of prosecuting both females and males and that the prosecutor's office had never informed law enforcement officials that it would not prosecute females. While this evidence may have been relevant to a selective-prosecution claim, it is not relevant to a selective-enforcement claim.

proceeding. *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017).[3] Thus, for the reasons described in *Aparicio*, we hold Marcos-Callejas's selective-enforcement equal protection claim is cognizable in a pretrial habeas proceeding.

### D. Marcos-Callejas Established a Prima Facie Case of Selective Enforcement

Marcos-Callejas next contends that he established a prima facie claim of selective enforcement.

The defendant in a criminal case bears the burden of establishing a prima facie claim of selective enforcement, by showing the law enforcement "policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)); *see Aparicio*, 672 S.W.3d at 708 (quoting *Armstrong*, 517 U.S. at 465); *Washington*, 869 F.3d at 214; *United States v. Eshetu*, — F.Supp.3d —, 2023 WL 7384996, at *12 (D.D.C. Nov. 8, 2023); *Long v. Tanner*, 170 S.W.3d 752, 754–55 (Tex. App.—Waco 2005, pet. denied) (quoting *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir.), *cert. denied*, 540 U.S. 1048 (2003)). In the context of a selective-enforcement claim based on alleged gender discrimination, the defendant must show that similarly-situated

---

[3] Federal courts agree that selective-prosecution and selective-enforcement claims require the same substantive showing from the defendant. *See Conley*, 5 F.4th at 789; *Washington*, 869 F.3d at 214, 216; *United States v. Eshetu*, — F.Supp.3d —, 2023 WL 7384996, at *12 (D.D.C. Nov. 8, 2023). The federal courts disagree regarding the standard of proof to be applied in selective-enforcement cases, however—some courts apply the same standard of proof as in selective-prosecution cases, that being "clear evidence" of discriminatory intent and effect; some courts apply a lesser standard for obtaining discovery in selective-enforcement cases but the same standard for the substantive claim; and at least one court applies a "preponderance of the evidence" standard for substantive claims of selective enforcement. *Conley*, 5 F.4th at 789 (holding that "selective-enforcement claims must be proven by a preponderance of the evidence"); *Washington*, 869 F.3d at 216, 220 (holding that the substantive claims are both subject to clear evidence standard of proof but discovery requests in selective-enforcement claims are subject to a less stringent standard than discovery requests in selective-prosecution cases); *Eshetu*, 2023 WL 7384996, at *12 (recognizing that "some jurisdictions … have lowered the standard for discovery in selective-enforcement cases" but that "ultimate success on a selective-enforcement claim still requires proving that the challenged law enforcement action had both discriminatory effect and discriminatory purpose"); *Thompson v. Badgujar*, Civ. No. DLB-20-1272, 2023 WL 6381509, at *3 (D. Md. Sept. 29, 2023) ("The standard for proving selective prosecution claims against prosecutors also applies to selective enforcement claims against police officers."). We need not consider the proper standard, however, because (1) the elements of the two claims are identical, regardless of the standard of proof, and (2) the result of this case is the same regardless of the standard of proof applied. We will therefore not consider whether the appropriate standard of proof is by "clear evidence" or by a preponderance of the evidence.

individuals of the opposite sex could have been arrested or referred for prosecution but were not and that the decision to arrest the defendant or to refer the defendant for prosecution was based on the defendant's sex. *See Aparicio*, 672 S.W.3d at 708; *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001); *Eshetu*, 2023 WL 7384996, at \*12. "Parties are 'similarly situated' for purposes of a selective-enforcement claim when there are no legitimate factors that might justify making different law-enforcement decisions with respect to them." *Eshetu*, 2023 WL 7384996, at \*12.

Here, the evidence Marcos-Callejas presented at the habeas hearing was similar to the evidence presented in *Aparicio*. *See Aparicio*, 672 S.W.3d at 701–06. Specifically, the evidence shows that although there had been 550 criminal trespassing cases related to OLS in Jim Hogg County and women had been found with men who were arrested and referred for prosecution, no women had been arrested for or charged with criminal trespass. Moreover, Trooper Leal testified that it was DPS policy to arrest men, but not women, for the offense of criminal trespass; that the sole woman found in the group of six individuals that included Marcos-Callejas was not arrested or charged with criminal trespass while all of the men, including Marcos-Callejas, were arrested and charged; and that DPS had not even recorded any information pertaining to the sole woman who was part of the group.

This evidence demonstrates that women who were found allegedly trespassing with men who were charged with criminal trespass could have been arrested and charged with criminal trespass but were not. We therefore hold, as we did in *Aparicio*, that Marcos-Callejas "has shown a discriminatory effect." *Aparicio*, 672 S.W.3d at 713.

This evidence also shows that law enforcement decided, based on DPS policy, not to arrest women for, or charge women with, criminal trespass based exclusively on their gender, without

consideration of any other factors.[4] The evidence therefore shows that the decision to arrest Marcos-Callejas, to charge him with criminal trespass, and to refer him to state prosecutors for prosecution was motivated by his sex, because, under DPS policy, he would not have been arrested or charged if he were a female. We therefore hold that Marcos-Callejas has shown that the decision to arrest and charge him was motivated by a discriminatory purpose.

We further find the arguments made by the State in its appellate brief unpersuasive. First, the State contends that it did not discriminate because all persons found with Marcos-Callejas "were taken into custody by law enforcement officials in this case." The State concedes that all females alleged to have committed criminal trespass "were released by Texas law enforcement" but contends that this does not constitute discrimination because the females "were handed over to federal authorities … and … were retained in the custody of" federal law enforcement. This argument, however, misses the point of a selective-enforcement claim—that Marcos-Callejas was arrested by State law enforcement officers and referred to State prosecutors for prosecution, when similarly-situated women were neither arrested nor referred for prosecution. In fact, by conceding that women were released, regardless of where or to whom they were released, the State has admitted that it treated similarly-situated persons differently, because the men were not released and, as we stated in *Aparacio*, "[t]he men charged face time served in jail under state law; the women do not." *Aparicio*, 672 S.W.3d at 714. Thus, we find that the State's first argument actually supports our conclusion that the State treated similarly-situated persons differently.

Second, the State contends that Marcos-Callejas failed to show a State policy that was motivated by a discriminatory purpose, because some male offenders were released into federal

---

[4] We note the DPS trooper did not obtain contact or identifying information for the female who was discovered with Marcos-Callejas. It is therefore clear that law enforcement possessed no information that could have provided a basis for a legitimate factor to justify making a different law enforcement decision with respect to the female. *See Eshetu*, 2023 WL 7384996, at *12.

law enforcement custody. Specifically, the State argues that "[t]he record shows that some males in the same age range as [Marcos-Callejas] were released by Texas law enforcement officers to the custody of the U.S. Border Patrol" and that the record "reflects there were exceptions for 60-plus year old males, injured males, and males who were accompanied by family members." Contrary to the State's arguments, the record in this case does not show that any males were released by Texas law enforcement, to federal custody or otherwise. Moreover, even if the record did reflect the existence of these exceptions, persons to whom the exceptions applied would not be "similarly situated" to Marcos-Callejas, because none of these exceptions applied to him. And, considering only the persons similarly situated to Marcos-Callejas—the persons, whether male or female, found trespassing under OLS to whom the exceptions did not apply—the evidence shows that similarly-situated women were neither arrested for nor charged with criminal trespass, while men, including Marcos-Callejas, were arrested and charged. Thus, even if the evidence showed that the exceptions existed, the evidence would still show that the decision to arrest Marcos-Callejas was based on his sex, because he would not have been arrested or charged if he were a female. Accordingly, "regardless of whether the State also discriminated on the basis of age, minority, or family unit, [Marcos-Callejas] has shown that the State expressly discriminated on the basis of sex." *Aparicio*, 672 S.W.3d at 714.

The evidence in this case, like the evidence in *Aparicio*, was undisputed that the decision to arrest Marcos-Callejas and refer him to the Jim Hogg County Attorney for prosecution was motivated by his sex. *See Aparicio*, 672 S.W.3d at 714. In fact, the State admitted, in its response in the trial court, that men were prosecuted under state trespass law but women were not and conceded, in its appellate brief, that, "while [Marcos-Callejas] was arrested and taken into custody for criminal trespass solely based upon his gender, all female offenders at the time of his arrest were released by Texas law enforcement officials." Accordingly, we hold that Marcos-Callejas

sustained his burden of establishing a prima facie case of selective enforcement. *See id*. at 714; *Vazquez-Bautista*, 683 S.W.3d at 511; *State v. Gomez*, — S.W.3d —, No. 04-22-00872-CR, 2023 WL 7552682, at *4–5 (Tex. App—San Antonio Nov. 15, 2023, pet. filed); *see also Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021) (discussing "undisputed" facts and stating a trial court is bound to believe a fact that is conclusively established); *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) (noting an "undisputed fact" is a fact both parties agree to); *Robinson v. State*, 377 S.W.3d 712, 719–20 (Tex. Crim. App. 2012); *Evans v. State*, 202 S.W.3d 158, 162-63 & n.16 (Tex. Crim. App. 2006) (discussing concept of "undisputed facts" and recognizing that the Texas Supreme Court had stated evidence becomes conclusive "when a party admits it is true") (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005)). Thus, to the extent that the trial court found that Marcos-Callejas failed to establish a prima facie case of selective enforcement, we conclude that any such finding would not be supported by the record and would be an abuse of the trial court's discretion.[5]

### E.  The State Failed to Justify Its Discriminatory Conduct

Finally, Marcos-Callejas argues that the State failed to justify its decision to discriminate based on sex. Because the trial court held a full hearing on Marcos-Callejas's selective-enforcement claim and provided the State with an opportunity to present any evidence and argument it had related to the selective-enforcement claim, we conclude we must determine "whether the State met its burden of justifying its discriminatory treatment of" Marcos-Callejas. *Vazquez-Bautista*, 683 S.W.3d at 512.

---

[5] Because the trial court did not enter findings of fact or conclusions of law or otherwise indicate whether it found that Marcos-Callejas failed to establish a prima facie case of selective enforcement and/or that the State justified its discriminatory treatment of Marcos-Callejas, we must determine whether either such finding would be supported by the record in order to determine whether the trial court abused its discretion by denying Marcos-Callejas's request for habeas relief. *See, e.g.*, *Ex parte Evans*, 410 S.W.3d 481, 484 (Tex. App.—Fort Worth 2013, pet. ref'd) ("We will uphold the trial court's judgment as long as it is correct on any theory of law applicable to the case.").

"Once the defendant establishes a prima facie case of selective [enforcement] in violation of equal protection rights, the burden shifts to the State to justify the discriminatory treatment." *Aparicio*, 672 S.W.3d at 708; *see Vazquez-Bautista*, 683 S.W.3d at 513. "Because a federal constitutional equal protection claim on the basis of gender discrimination is subject to intermediate scrutiny, the State must demonstrate that the discriminatory classification is substantially related to an important governmental interest." *Aparicio*, 672 S.W.3d at 708. A claim based on the Texas Equal Rights Amendment, however, is subject to strict scrutiny, meaning "the State must show that its discriminatory classification 'is *narrowly tailored* to serve a compelling governmental interest.'" *Vazquez-Bautista*, 683 S.W.3d at 512 (quoting *Aparicio*, 672 S.W.3d at 716); *see Gomez*, 2023 WL 7552682, at *5.

Here, the State did not call any witnesses or introduce any evidence at the habeas hearing in the trial court. In its response to Marcos-Callejas's habeas application in the trial court, the State argued that it had a legitimate interest in protecting its citizens "through the enforcement of the criminal trespass statute." The State further contended "both males and females are being prosecuted under different laws for the same acts and limited state facilities to house both males and females is the basis behind the state predominantly prosecuting males." Similarly, in its appellate brief, the State argues,

> In this case, it should be beyond debate that the State's actions serve important governmental objectives. The massive influx of undocumented migrants from all over the world, arriving without any screening involving their criminal backgrounds, health backgrounds, and security risk backgrounds creates a real danger to both public health and public safety. Further, the massive logistical effort and monetary cost associated with this influx of individuals from other countries necessitates that certain individuals be processed through the federal system and the policies which [Marcos-Callejas] now complains are substantially related to achievement of the legitimate goals of the State of Texas.

The State does not, however, cite to any evidence to support any of these assertions. Nor does the State explain, let alone provide evidence to show, how DPS's policy, pursuant to OLS,

of arresting and referring men, but not similarly-situated women, for prosecution by State prosecutors for the offense of criminal trespass is narrowly tailored to serve, or even substantially related to, its interest in protecting its citizens. Further, we have previously rejected the State's reliance on limited housing facilities as a justification for its discriminatory conduct. *See Gomez*, 2023 WL 7552682, at *5; *Ex parte Gonzalez-Morales*, No. 04-22-00629-CR, 2023 WL 8793121, at *3 (Tex. App.—San Antonio Dec. 20, 2023, no pet.) (mem. op., not designated for publication). And we have previously rejected the other justifications the State offers in this case, on the basis that the State failed to explain or show how its discriminatory classification was narrowly tailored to address, or was substantially related to, its interests. *Gonzalez-Morales*, 2023 WL 8793121, at *3; *see Gomez*, 2023 WL 7552682, at *5–6; *Vazquez-Bautista*, 683 S.W.3d at 513–14.

Accordingly, because the State has failed to explain or provide evidence to show that its discriminatory conduct—arresting and referring men for prosecution for the offense of criminal trespass, while detaining and then releasing women found in the exact same circumstances as the men—is narrowly tailored to serve, or even substantially related to, the State's legitimate interests, we hold that the trial court abused its discretion in denying Marcos-Callejas relief on both his selective-enforcement claim under the Texas Equal Rights Amendment and his federal equal protection selective-enforcement claim. *Vazquez-Bautista*, 683 S.W.3d at 513–14; *see Gonzalez-Morales*, 2023 WL 8793121, at *3; *Gomez*, 2023 WL 7552682, at *5–6.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order denying Marcos-Callejas's requested relief on his application for writ of habeas corpus and remand the case to the trial court

with instructions to discharge Marcos-Callejas from bail and dismiss with prejudice the information charging him with misdemeanor criminal trespass.

Liza A. Rodriguez, Justice

PUBLISH